# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 1986 | **DATE** | 8/9/2012 |
| **CASE TITLE** | Sharlatte Coates vs. Mystic Blue Cruises, Inc., et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff's objection to the order requiring production of documents [#75] is sustained in part and overruled insofar as this court imposes a protective order. Plaintiff shall produce redacted versions of communications as set out below before the plaintiff's deposition proceeds. The parties are directed to file a copy of the hearing transcript before the magistrate judge on the court's docket.

■[ For further details see text below.]

Docketing to mail notices.

## STATEMENT

    This is a sexual harassment case in which plaintiff, Sharlatte Coates, alleges, as relevant here, that her supervisor, defendant Brian Parker, sexually harassed her in a variety of ways, culminating in his following her into a private area of the workplace and propositioning her for sex in exchange for excusing a spurious accusation that she had refused to follow his orders. Defendants moved to compel discovery of online communications via social media between plaintiff and other employees of Mystic Blue. Plaintiff now objects to the order of the magistrate judge to produce two Facebook messages which reveal intimate conversations between her and certain male employees of defendant Mystic Blue Cruises, Inc. Plaintiff contends that the magistrate judge made an error of law because evidence of a person's prior sexual history is inadmissible at trial under Federal Rule of Evidence 412 and therefore irrelevant under Rule 26 of the Federal Rules of Civil Procedure. Based on the plaintiff's submission in her objection, the arguments made to the magistrate judge, and the colloquy before this court on July 31, 2012, the court overrules the objection but authorizes some of the proposed redactions submitted by plaintiff.

    The legal principles applicable to review of discovery rulings of magistrate judges are succinctly summarized in *Webb* v. *CBS Broadcasting, Inc.*, No. 08 C 6241, 2011 WL 842743, at *2 (N.D. Ill. Mar 8, 2011) (internal citations and quotation marks omitted):

> A district court's review of any discovery-related decisions made by the magistrate judge is governed by Rule 72(a) of the Federal Rules of Civil Procedure. Under Federal Rule of Civil Procedure 72(a), a district judge may set aside a magistrate judge's ruling on a non-dispositive motion if the order is clearly erroneous or contrary to law. The clear error standard means that the district court can overturn the magistrate judge's ruling only if the district court is left with the definite and firm conviction that a mistake has been made. In general, under the clearly erroneous standard, if there are two permissible views of the facts, a district court's choice between them cannot be clearly erroneous.

**STATEMENT**

Defendants argued broadly in their motion to compel that the communications "may contain information regarding occurrences during the relevant time period that may either support Defendants' defenses and/or contradict Plaintiff's allegations." Def. Mot. Compel, Dkt. No. 26 at 10. At the hearing on the motion, defendants added no further clarity as to the potential relevance of the communications (understandably since counsel could only guess their content).[1] The magistrate judge ordered the production of two Facebook communications on the basis that each was to or from plaintiff and another employee and thus relevant for discovery purposes even though arguably inadmissible at trial. See Tr. of Proceedings Before Hon. Sheila M. Finnegan at 6-7 (July 12, 2012). The magistrate judge made no explicit reference in her ruling to having evaluated the issue under Evidence Rule 412, although the transcript leaves no doubt that she was well prepared for the motion hearing.

Under Rule 412, evidence offered to prove a victim's sexual predisposition or that a victim engaged in other sexual behavior is inadmissible unless "its probative value substantially outweighs the danger of harm to any victim and unfair prejudice to any party." *See* Fed. R. Evid. 412(a) and (b)(2). The advisory committee notes state that the procedure of Rule 412(c) relating to notice of intention to use such evidence at trial does not apply to discovery but that courts should enter appropriate protective orders to protect against unwarranted inquiries and to ensure confidentiality. Further, it advised, "Courts should presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." Fed. R. Evid. 412, advisory committee's notes to 1994 amendments.[2]

The magistrate judge did not have the luxury of determining the admissibility of the evidence in reaching her decision. To the extent she erred, she erred on the side of full disclosure, which is rarely "clearly erroneous" in light of the broad definition of relevance under Rule 26 of the Federal Rules of Civil Procedure. The magistrate judge did an admirable job of clearing a mountain of disputes at the hearing and cannot be seriously faulted if she failed to fully consider one issue, particularly where plaintiff's counsel was unable to answer her question about the relationship between the parties to the communications. *See* Tr. at 3, ll. 14-19.[3] Nonetheless, discovery implicating Rule 412 requires further examination of the relevance of the discovery than was made here.

This court has reviewed the documents *in camera*. At the July 31 status, defendants argued that the materials might be possible impeachment evidence should a witness who contributed to the "hostile environment" be one of the participants in the communications, reflecting that plaintiff was willing to have a relationship with him in spite of this. But even then, the communications post date plaintiff's employment by nine months to over two years.[4] The evidence is remote in time and could have the slightest, if any, bearing on the specific events at issue in this case.

Defendants made the alternative argument that the materials might be used for impeachment should one of the participants in the conversations testify in plaintiff's favor and then deny that they had a sexual relationship. Redacted versions of the communications should be sufficient for this purpose. The court sustains the objection for any material beyond the redacted version, as modified below, at this time. If after the taking the relevant depositions defendants can ground their argument for discovery of the entire communications in a specific theory, they may renew their motion before the magistrate judge.

The redactions shall be modified as follows:

Plaintiff shall reveal the words "me give you money" in the January 17, 2011 communication.

Plaintiff shall reveal the words "is u still gone gimmie some like you said?" in the January 4, 2012 communication.

Plaintiff shall reveal the words "its time for make up sex" in the June 8, 2010 tweet.

**STATEMENT**

cc: Hon. Sheila M. Finnegan

1. At the hearing before this court on plaintiff's objection, defendants' counsel stated that the discovery could be relevant to plaintiff's claim of emotional distress, although this argument does not appear to have been made to the magistrate judge concerning these particular materials.

2. The advisory committee notes have persuasive force although not the force of law. *See, e.g.*, *United States* v. *Vonn*, 535 U.S. 55, 64 n.6, 122 S. Ct. 1043, 152 L. Ed. 2d 90 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule[.]"); *C.J. Wieland & Son Dairy Prods. Co.* v. *Wickard*, 4 F.R.D. 250, 252 (E.D. Wis. 1945) ("While persuasive, the Advisory Committee's notes cannot be accepted as authority. To do so would involve a disregard of the limitation and qualification in that respect imposed by the committee.").

3. "And there is some discussion in plaintiff's supplemental filing about the fact that these shouldn't be produced because it might include or would include, for example, discussions using crass language with her own boyfriend. Is her boyfriend one of the individuals on Exhibit A [*i.e.*, an employee]?"

4. One of the communications is a tweet that falls into the category of sexual history but was not the subject of the Order. The parties previously agreed that the ruling on the Facebook entries would apply to the tweet. The tweet was made nine months after plaintiff's termination. The two Facebook entries that were the subject of the order, however, post date plaintiff's employment by one and one-half to two and one-half years.